UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:20-cv-00654-FDW-DSC

| | |
|---|---|
| CHEYENE JONES AND SARA J. GAST, Individually and as representatives Of a class of similarly situated persons, on Behalf of the COCA-COLA CONSOLIDATED, INC. 401(K) PLAN, <br><br>    Plaintiff, <br><br>vs. <br><br>COCA-COLA CONSOLIDATED, INC., THE BOARD OF DIRECTORS OF COCA COLA CONSOLIDATED, INC., THE CORPORATE BENEFITS COMMITTEE OF COCA COLA CONSOLIDATED, INC.; and DOES No. 1-20, Whose Names Are Currently Unkown, <br><br>    Defendants. | ORDER |

THIS MATTER is before the Court on Defendants Coca-Cola Consolidated, Inc. ("Consolidated"), the Board of Directors of Coca-Cola Consolidated, Inc. ("Directors"), and the Corporate Benefits Committee of Coca-Cola Consolidated, Inc.'s ("Benefits Committee") Motion to Dismiss Plaintiff's Complaint. (Doc. No. 14). Having considered the Motion, the Court hereby DENIES Defendants' Motion to Dismiss.

## I.    BACKGROUND

This case arrived before the Court as a class action suit alleging breach of fiduciary duties

1

under the Employee Retirement Income Security Act ("ERISA"). (Doc. No. 1, ¶ 1).[1] Named Plaintiffs Cheyenne Jones ("Jones") and Sara J. Gast ("Gast") are former employees of Coca-Cola. Id. Jones is a current participant in the Coca-Cola Consolidated, Inc. 401(k) Plan ("the Plan"), while Gast is a former participant. Id. at ¶¶ 9-10. The Plan is a defined contribution plan and is a qualified tax-deferred vehicle under Section 401 of the Internal Revenue Code, 26 U.S.C. §§ 401(a) and (k). Id. at ¶ 2. As of December 31, 2019, the Plan had 10,170 participants with account balances and assets totaling $784 million. Id. at ¶ 4.

### A. The Plan Overall

During the times relevant to the Complaint, the Plan ran similar to most other 401(k) plans. Id. at ¶ 19. Participants directed the investment of their contributions into various options offered by the Plan, such as mutual funds, collective investment trusts, and Coca-Cola Company common stock. Id. The majority of administrative expenses incurred by the Plan were paid by the participants via a reduction in their investment income. Id. Defendants are alleged fiduciaries of the Plan and were responsible for crafting the Plan lineup of investment options. Id. at ¶ 25. Herein lies the majority of Plaintiffs' Complaint—Defendants breached their fiduciary responsibilities by mismanaging the Plan lineup. Id.

### B. The Plan Lineup

The bulk of Plaintiffs' Complaint concerns the Fidelity Freedom Funds ("Active Suite"). Id. at ¶¶ 24-41. The Plan has offered the Active Suite since 2009. Id. at ¶ 25. The Active Suite is a suite of target date funds designed to offer an "all-in-one" retirement solution by having investment

---

[1] The background described herein is taken from Plaintiff's Complaint, (Doc. No. 1), and all allegations are treated as true for purposes of ruling on the pending motion. Nothing described in this section—or this Order—should be construed as the Court making any findings of fact.

2

managers shift the portfolio of underlying funds to become more conservative as the target retirement date approaches. Id. at ¶ 24. The Active Suite invests predominantly in actively-managed Fidelity mutual funds. Id. at ¶ 26. Fidelity also offers a similarly functioning, target date fund suite called Fidelity Freedom Index Funds ("Index Suite"). Id. at ¶ 25. The main difference between the Active Suite and the Index Suite is their underlying investments. Id. at ¶ 26. The Active Suite invests in actively-managed Fidelity mutual funds. Id. at ¶ 26. The Index Suite invests in Fidelity funds that track market indices. Id. Plaintiffs set forth three primary issues with Defendants' choice to offer the Active Suite instead of the Index Suite. Id. at ¶¶ 28-41. First, Plaintiffs allege the Active Suite is too "high-risk" to be suitable for the plan participants. Id. at ¶¶ 28-34. Second, Plaintiffs allege the Active Suite has higher fees than the Index Suite. Id. at ¶ 35. Third, Plaintiffs allege that other plan fiduciaries and investors lost faith in the Active Suite. Id. at ¶ 38. Plaintiffs have similar issues with the Carillon Eagle Small Cap Growth Fund Class R5 ("Carillon Fund") and the T. Rowe Price Mid-Cap Value Fund ("T. Rowe Fund"). Id. at ¶¶ 43-46.

### C. Other Issues with the Plan

Separate from the Plan's lineup offerings and the investment fees charged by the funds, Plaintiffs allege the record-keeping and administrative costs of the Plan were excessive. Id. at ¶ 47-50. The Plan paid Fidelity $59 per participant for record-keeping services alone, but given the size of the Plan, Plaintiffs allege that Fidelity's services were worth $14-$21 per participant. Id. at ¶ 48. Finally, Plaintiffs also allege the overall expense ratio of the entire menu of investment options was negligently expensive because total plan costs for participants were double that of similarly situated plans. Id. at ¶¶ 51-55.

Plaintiffs filed their Complaint on November 24, 2020 against the above-named

3

Defendants. See (Doc. No. 1). On January 14, 2020, Defendants Coca-Cola Consolidated, Inc., the Board of Directors of Coca-Cola Consolidated, Inc., and the Corporate Benefits Committee of Coca-Cola Consolidated, Inc. filed a motion to dismiss. See (Doc. No. 14). The motion has been fully briefed and is ripe for review.

## II. STANDARD OF REVIEW

### A. Subject Mater Jurisdiction

Rule 12(b)(1) provides for dismissal of claims against all defendants where a court lacks jurisdiction over the subject matter of the lawsuit. Lack of subject matter jurisdiction may be raised at any time either by a litigant or the court. Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 382 (1884). The ability of a court to independently address subject matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject matter jurisdiction for the first time on appeal, thereby voiding the judgment. Capron v. Van Noorden, 2 Cranch 126, 127, 2 L. Ed. 229 (1804). The Federal Rules of Civil Procedure anticipate this issue and provide that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

Article III standing is an essential part of subject-matter jurisdiction. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). To establish Article III standing, a plaintiff must show "(1) that he or she suffered an injury in fact that is concrete particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." Thole v. U.S.

4

Bank N.A., 140 S. Ct. 1615, 1618, 207 L. Ed. 2d 85 (2020) (citing Lujan, 504 U.S. at 560-61). "In a class action matter, we analyze standing based on the allegations of personal injury made by the named plaintiff." Dreher v. Experian Info. Sols., Inc., 856 F. 3d, 343 (4th Cir. 2017) (internal quotations omitted). "There must be a named plaintiff with constitutional standing to assert each claim." Clarke v. Duke Univ., No. 16-1044, 2018 WL 1801946, at *7 (M.D.N.C. Apr. 13, 2018) (citing DiamlerChrysler Corp. v. Cuno, 547 U.S. 332, 352, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006). "Absent constitutional standing, a federal court does not have subject matter jurisdiction." Id.

### B. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when the pleading party fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal "sufficiency of a complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); accord E. Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive only if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at

678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

### III. ANALYSIS

Plaintiffs' Complaint contains three counts: (1) breach of fiduciary duty; (2) failure to monitor fiduciaries and co-fiduciary breaches; and (3) liability for knowing breach of trust. However, prior to addressing Plaintiffs' claims, the Court first determines whether Plaintiffs have standing to bring this case. See Mansfield, 111 U.S. at 382.

#### A. Standing

In their Motion to Dismiss, Defendants argue both named Plaintiffs lack standing due to a lack of injury-in-fact. Id. at pp. 4-6. Defendants argue that, in an ERISA § 502(a)(2) case, "in order to claim 'the interests of others, the litigants themselves still must have suffered an injury in fact, thus giving' them 'a sufficiently concrete interest in the outcome of the issue in dispute.'" Thole, 140 S. Ct. at 1620 (internal citation omitted). The Supreme Court in Thole found that the plaintiffs had not suffered an injury-in-fact but were careful to limit their holding: "of decisive importance to this case, the plaintiffs' retirement plan is a defined-benefit plan, not a defined-contribution plan." Id. at 1618. Because the plaintiffs were participants in a defined-benefit plan, rather than a defined-contribution plan, they were guaranteed "a fixed payment each month *regardless of the plan's value or its fiduciaries' good or bad investment decisions*." Id. at 1616-17 (emphasis added). Therefore, the Supreme Court determined there was no injury-in-fact to the plaintiffs because "the outcome of this suit would not affect [the plaintiffs'] future benefit payments." Id. at 1619.

However, with a defined-contribution plan, where future benefit payments *would* be affected by the outcome of a lawsuit, courts are more likely to find an injury-in-fact sufficient for

6

Article III standing. *See id.* at 1618 ("[In] a 401(k) plan, the retirees' benefits are typically tied to the value of their accounts and the benefits can turn on the plan fiduciaries' particular investment decisions."). For example, the Fourth Circuit has previously held that participants in defined-contribution plans suffer an injury-in-fact when alleging that a fiduciary's breach has negatively impacted their accounts. In re Mut. Funds Inv. Litig., 529 F3d 207, 216 (4th Cir. 2008) ("If the plaintiffs' allegations are true, they suffered injury in that their retirement accounts were worth less than they would have been absent the breach of duty, and this injury was caused, as the plaintiffs have alleged, by the fiduciaries' misconduct."); Pender v. Bank of Am. Corp., 788 F.3d 354, 367 (4th Cir. 2015) (Ruling in a defined-contribution suit alleging fiduciary breaches: "For standing purposes, plaintiffs incurred an injury in fact, i.e., an invasion of a legally protected interest, because they 'suffered an individual loss.'").

Here, Plaintiffs allege injury to their individual 401(k) accounts in the form of excessive record-keeping and administrative costs as well as an expensive overall investment menu endured by each Plan participant. (Doc. No. 1, ¶¶ 47-55). These injuries are alleged to be the result of Defendants' breach of fiduciary duty, failure to monitor, and breach of trust. Therefore, "if the plaintiffs' allegations are true, they suffered injury in that their retirement accounts [are] worth less they would have been absent the breach[s]". In re Mut. Funds Inv. Litig., 529 F3d at 216. The Court accordingly finds that Plaintiffs have Article III standing to assert their claims as they have properly alleged they suffered an injury-in-fact.

### B. Count I: Breach of Fiduciary Duty

In order to allege a breach of fiduciary duty under ERISA, Plaintiffs must show that: (1) the Plan is governed by ERISA; (2) Defendants were fiduciaries of the Plan; and (3) Defendants

7

breached their duties of prudence and/or loyalty under ERISA, resulting in losses to the participants of the Plan. In re MedStar ERISA Litig., CA No. RDB-20-1984, 2021 WL 391701 at *16-17 (D. Md. Feb. 4, 2021).

The first two elements to allege a breach of fiduciary duty under ERISA are met. It is undisputed at this point that the Plan is governed by ERISA and Plaintiffs have alleged that each Defendant is a fiduciary with supporting factual allegations. See (Doc. No. 14, pp. 11-16). All that remains for the Court to decide is whether Plaintiffs sufficiently alleged the third requirement to state a claim for breach of fiduciary duty under ERISA: whether Defendants breached their duties of prudence and/or loyalty under ERISA, resulting in losses to the participants of the Plan.

ERISA requires fiduciaries to craft a plan's lineup "with the care, skill, prudence, and diligence . . . that a prudent man acting in a like capacity and familiar with such matters would use" in the same circumstances. 29 U.S.C. § 1104(a)(1)(B). "Courts 'measure fiduciaries' investment decisions and disposition of assets' against the prudent person standard." Falberg v. Goldman Sachs Group, Inc., 2020 WL 3893285, at *20 (S.D.N.Y. July 9, 2020) (citing Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 419, 134 S. Ct. 2459, 189 L. Ed. 2d 457 (2014)). "In determining whether fiduciaries have breached their duty of prudence, we ask whether the individual trustees, at the time they engaged in the challenged [actions], employed the appropriate methods to investigate the merits of the investment and to structure the investment." Tatum v. RJR Pension Inv. Comm., 761 F. 3d 346, 356 (4th Cir. 2014).

Here, Plaintiffs allege Defendants breached their fiduciary duties in three distinct ways, all of which have the potential to independently satisfy the third element of Plaintiffs claim: (1) the

8

overall investment menu contained costs that were imprudent,[2] (2) the Plan's record-keeping and administrative fees were imprudent,[3] and (3) specific funds in the Plan lineup were imprudent.[4] (Doc. No. 1).

Courts in this circuit have found a fiduciary breach when it was alleged that a plan failed to utilize a cheaper investment option that offers identical underlying investments. See Kruger v. Novant Health, Inc., 131 F. Supp. 3d 470, 476-78 (M.D.N.C. 2015). Plaintiffs here allege a failure to utilize a cheaper investment option when Defendants failed to select available collective trusts and the least expensive available share class. (Doc. No. 1, ¶¶ 52-55). Additionally, Plaintiffs assert that the underlying investments are identical when selecting a collective trust or different share class. Id. at ¶¶ 53, 55. Therefore, the Court finds Plaintiffs' factual allegations regarding Defendants' alleged failure to utilize cheaper investments that offer identical underlying investments sufficiently states a claim for breach of fiduciary duty.

Because Plaintiffs' first allegation in support of Count I is sufficient to state a claim for relief, the Court accordingly declines to address Defendants' remaining arguments and DENIES Defendants' Motion to Dismiss Count I.

### C. Count II: Failure to Monitor

Plaintiffs allege Defendant Coca-Cola failed to adequately monitor the Administrative Committee. (Doc. No. 1, ¶ 81). "[Fiduciary] authority 'carries with it a duty to monitor

---

[2] Failing to utilize a cheaper investment option that offers identical underlying investments independently constitutes a breach of one's duties of prudence and/or loyalty under ERISA. See Kruger v. Novant Health, Inc., 131 F. Supp. 3d 470, 476-78 (M.D.N.C. 2015).

[3] Alleging that excessively high fees were charged to plan participants can independently constitute a breach of one's duties of prudence and/or loyalty under ERISA. See Turpin v. Duke Energy Corp., No. 3:20-CV-00528-RJC-DSC, 2021 WL 828480 at **8-9 (W.D.N.C. Mar. 4, 2021).

[4] Allegations that a selected fund was an imprudent choice can independently constitute a breach of one's duties of prudence and/or loyalty under ERISA. See MedStar, 2021 WL 391701 at **18-22.

9

appropriately those subject to removal.'" MedStar, 2021 WL 391701 at *23 (quoting Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1465 (4th Cir. 1996)). Defendants first argue this claim fails because a failure-to-monitor claim is not an independent ground for relief and depends upon an underlying breach of fiduciary duty claim. (Doc. No. 15, p. 16). However, because the Court has already established that Plaintiffs have stated a claim for breach of fiduciary duty, this argument fails.

Second, Defendants argue Plaintiffs have not alleged facts sufficient to make a threshold showing that the monitoring fiduciary failed to "review the performance of its appointees at reasonable intervals in such manner as may be reasonably expected to ensure compliance with the terms of the plan and statutory standards." In re Calpine Corp., No. C-03-1685 SBA, 2005 WL 1431506 at *6 (N.D. Cal. Mar. 31, 2005). However, Plaintiffs alleged just that,[5] and at this stage in the litigation "an analysis of the precise contours of the defendants' duty to monitor. . . is premature." In re M&T Bank Corp. ERISA Litig., No. 16-CV375 FPG, 2018 WL 4334807 at *31 (W.D.N.Y. Sep. 11, 2018) (internal citations omitted).

As a result, Plaintiffs have sufficiently alleged a claim for failure to monitor, and Defendants' Motion to Dismiss is DENIED with regard to Count II.

### D. Count III: Knowing Breach of Trust

The Fourth Circuit has not yet formally recognized a claim for knowing breach of trust. Gordon v. CIGNA Corp., 890 F.3d 463, 476 (4th Cir. 2018). However, the Fourth Circuit has stated that if such a cause of action were to exist, "an essential element of such a claim would be

---

[5] Plaintiffs allege "Coca-Cola is responsible for appointing, overseeing, and removing members of the Administrative Committee, who, in turn, are responsible for appointing, overseeing, and removing members of the Benefits Committee." (Doc. No. 1, ¶ 81). Plaintiffs also allege Defendants failed to review the performance and fiduciary processes of the appointees of the Administrative Committee. Id. at ¶ 85.

the defendant's knowing participation in a breach by a fiduciary." Id. In MedStar, a knowing breach of trust claim survived a motion to dismiss where there were allegations that the defendants were in a position to know of the alleged breaches of fiduciary duty. MedStar, 2021 WL 391701 at \*\*24-25. The facts here are similar to those in MedStar in that Plaintiffs allege Defendants' roles and relationships would place them in a position to know of nonfeasance or malfeasance of the others. Compare (Doc. No. 1, ¶¶ 11-14) with MedStar, 2021 WL 391701 at \*\*3-5. Therefore, this Court finds that, just as in MedStar, "given the allegations with respect to the roles and relationships of the Defendants identified in the Complaint, dismissing their claim under Count III at this time would be premature." MedStar, 2021 WL 391701 at \*\*24-25.

As a result, Plaintiffs have sufficiently stated a claim for a knowing breach of trust and Defendants' Motion to Dismiss is DENIED with regard to Count III.

### IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants Motion to Dismiss (Doc. No. 14) is DENIED.

IT IS SO ORDERED.

Signed: March 31, 2021

Frank D. Whitney
United States District Judge