# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | |
|---|---|
| CHEYENNE JONES AND SARA J. GAST, Individually and as representatives of a class of similarly situated persons, on behalf of the COCA-COLA CONSOLIDATED, INC. 401(K) PLAN, <br><br> Plaintiffs, <br><br> v. <br><br> COCA-COLA CONSOLIDATED, INC., THE BOARD OF DIRECTORS OF COCA-COLA CONSOLIDATED, INC., THE CORPORATE BENEFITS COMMITTEE OF COCA-COLA CONSOLIDATED, INC.; and DOES No. 1-20, Whose Names Are Currently Unknown, <br><br> Defendants. | Case No. 3:20-cv-00654-FDW-DSC |

## DEFENDANTS' MEMORANDUM SUPPORTING THEIR MOTION UNDER FEDERAL RULE OF EVIDENCE 702 TO EXCLUDE GERALD BUETOW'S DECLARATION AND OPINIONS

Emily S. Costin (*pro hac vice*)
ALSTON & BIRD LLP
The Atlantic Building
950 F Street, NW
Washington, D.C. 20004
Telephone: (202) 239-3695
emily.costin@alston.com

Jordan Elise Edwards (*pro hac vice*)
R. Blake Crohan (*pro hac vice)*
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7000
jordan.edwards@alston.com
blake.crohan@alston.com

Brian D. Boone
North Carolina Bar No. 38910
Brandon C.E. Springer
North Carolina Bar No. 54523
ALSTON & BIRD LLP
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Telephone: (704) 444.1000
brian.boone@alston.com
brandon.springer@alston.com

*Counsel for Coca-Cola Consolidated, Inc., The Board of Directors of Coca-Cola Consolidated, Inc., and The Corporate Benefits Committee of Coca-Cola Consolidated, Inc.*

# TABLE OF CONTENTS

The Bottom Line Up Front. ................................................................................................ 1

Background. ....................................................................................................................... 2

Legal Standard. ................................................................................................................. 3

Argument. .......................................................................................................................... 3

I.     Buetow's opinions are inadmissible because he did not apply a reliable
       methodology. ........................................................................................................... 3

       A.     Buetow's opinion that every fund underlying the Freedom Funds should
              have had a five-year track record is not based on a reliable methodology. ............ 4

       B.     Buetow's opinion that funds underlying the Freedom Funds should have
              outperformed their three- and five-year benchmarks is not based on a
              reliable methodology. ................................................................................... 5

       C.     Buetow's "composite scoring" is not reliable. ............................................. 6

II.    Buetow does not reliably apply his "methodology," and his calculations are
       incorrect. ................................................................................................................. 6

III.   Buetow's opinions are unreliable for additional reasons. ...................................... 9

IV.    Buetow's testimony will not help the Court resolve the motion for class
       certification. ............................................................................................................ 9

Conclusion. ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alevromagiros v. Hechinger Co.*,
    993 F.2d 417 (4th Cir. 1993) ...............................................................................................6

*Bunch v. Pac. Cycle, Inc.*,
    No. 4:13-CV-0036-HLM, 2014 U.S. Dist. LEXIS 183890 (N.D. Ga. Apr. 14, 2014)..............7

*Cook v. Sheriff of Monroe Cnty.*,
    402 F.3d 1092 (11th Cir. 2005) .........................................................................................10

*Cordoves v. Miami-Dade Cnty.*,
    104 F. Supp. 3d 1350 (S.D. Fla. 2015) ...............................................................................8

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993).............................................................................................................3

*General Elec. Co. v. Joiner*,
    522 U.S. 136 (1997).........................................................................................................4, 5

*Hall v. Bos. Sci. Corp.*,
    No. 2:12-cv-08186, 2015 U.S. Dist. LEXIS 23980 (S.D. W. Va. Feb. 27, 2015).....................7

*Lipitor (Atorvastatin Calcium) Mktg. v. Pfizer, Inc.*,
    892 F.3d 624 (4th Cir. 2018) ...............................................................................................3

*Ramos v. Banner Health*,
    461 F. Supp. 3d 1067 (D. Colo. 2020)..............................................................................1, 5, 7

*Rhyne v. U.S. Steel Corp.*,
    474 F. Supp. 3d 733 (W.D.N.C. 2020) ..............................................................................4, 5

*Sacerdote v. N.Y. Univ.*,
    328 F. Supp. 3d 273 (S.D.N.Y. 2018)................................................................................1, 6

*Sardis v. Overhead Door Corp.*,
    10 F.4th 268 (4th Cir. 2021) ..............................................................................................4, 5

*Thomas v. City of Chattanooga*,
    398 F.3d 426 (6th Cir. 2005) ...............................................................................................3

*Zenith Elecs. Corp. v. WH-TV Broadcasting Corp.*,
    395 F.3d 416 (7th Cir. 2005) ..............................................................................................1, 5

**RULES**

Fed. R. Evid. 702 ................................................................................................................ *passim*

**OTHER AUTHORITIES**

https://www.capitalgroup.com/individual/investments/fund/rilfx (showing December 14,
2012 fund inception date American Funds Inflation Linked Bond Fund, R-6).........................8

https://www.capitalgroup.com/individual/investments/fund/rmagx (showing November 1,
2010 fund inception date for American Funds Mortgage Fund, Class R-6).............................8

https://www.sec.gov/Archives/edgar/data/1177017/000120677414003171/nqrdf.htm
(showing all funds underlying the T. Rowe Price target date funds as of August 31,
2014) ...................................................................................................................................8

https://www.sec.gov/Archives/edgar/data/1177017/000120677415001504/nqrdf.htm
(showing all funds underlying the T. Rowe Price target date funds as of February 28,
2015) ...................................................................................................................................8

https://www.sec.gov/Archives/edgar/data/1380175/000005193115001145/aftd485b.htm
(showing all funds underlying the American Funds 2020 and 2030 target date funds
as of October 31, 2014 and April 30, 2015) ...........................................................................8

https://www.troweprice.com/literature/public/country/us/language/en/literature-
type/quarterly-factsheet/sub-type/mf-single-
class?productCode=RAF&currency=USD (showing July 28, 2010 fund inception
date for T. Rowe Price Real Assets Fund)................................................................................8

## THE BOTTOM LINE UP FRONT

*"A witness who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term."*

*Zenith Elecs. Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 419–20 (7th Cir. 2005) (Easterbrook, J.).

The Court should strike Gerald Buetow's declaration and exclude his testimony because his opinions are not based on a reliable methodology and he did not apply his own "methodology" reliably. *See* Fed. R. Evid. 702. Buetow's "methodology" was "simply [] the approach that one would take . . . to meet the requests of counsel, and meet their theory of liability." *See* Ex. 1 (Buetow Tr.) 102:23–103:3. That is not admissible expert testimony; it is lawyer argument by another name. And even if Buetow's "methodology" were reliable (it is not), he did not apply it reliably (and in fact made errors).

Courts have rejected Buetow's opinions in other cases, including one involving the Fidelity Freedom Funds, because his opinions were not the product of a reliable methodology[1] and were based on "unsupported assumptions" and "serious calculation errors."[2] The Court should do the same here. Buetow is not qualified to offer expert testimony relating to class-certification issues; he has never done so before. He also did not apply a widely used methodology and instead testified based on principles of "his own creation" (the phrase that one court used to describe Buetow's approach in another case).[3] This Court should strike Buetow's declaration (Dkt. 63) and exclude his opinions and testimony.

---

[1] *Sacerdote v. N.Y. Univ.*, 328 F. Supp. 3d 273, 283, n. 20, 312 n. 112, 316 (S.D.N.Y. 2018).

[2] *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1090, 1130 (D. Colo. 2020), *aff'd*, 1 F.4th 769 (10th Cir. 2021).

[3] *Sacerdote*, 328 F. Supp. 3d at 316.

1

## BACKGROUND

Plaintiffs moved to certify a class of participants in Consolidated's 401(k) Plan without offering expert testimony or a damages model supporting their motion. *See* Dkts. 45–50. In opposing Plaintiffs' motion, Defendants offered testimony from Lucy Allen. Allen described (among other things) the many economic conflicts and individualized issues that define the proposed class. Dkt. 57.

In response, Plaintiffs submitted a reply brief and declaration from Buetow, but Buetow later admitted that he has never offered testimony supporting class certification. Ex. 1, 12:15–17. Buetow also confirmed that he is "not opining" on (1) whether a class should be certified (Ex. 1, 17:12–14), (2) whether there are economic conflicts within the proposed class, (*id.* 22:16–20), (3) whether there are individualized issues within the proposed class (*id.* 22:21–24), (4) liability (Buetow Decl. ¶ 27 n.3; Ex. 1, 84:14–19), or (5) damages (Buetow Decl. ¶ 27 n.3; Ex. 1, 84:3–13). Buetow also conceded that he did not consider most of the materials cited in Allen's report. *See, e.g.*, Ex. 1, 24:2–7, 26:7–16, 76:19–22.

So why did Plaintiffs offer Buetow's testimony? To deflect attention away from the individualized issues that plague their liability theory and preclude class certification. At Plaintiffs' counsels' direction, Buetow criticized Allen's comparisons of the Fidelity Freedom Funds Active Suite to the Index Suite, identified alternative (unpleaded) investment options, and then speculated that every class member would have suffered losses. Buetow Decl. ¶¶ 27, 29. But Buetow acknowledged that he did not address 17 of the 20 funds Plaintiffs challenge and ignored most of Allen's opinions because he deemed them "irrelevant." *See* Buetow Decl. Table 1; Ex. 1, 74:13–16, 77:24–78:17, 98:8–15, 118:19–119:25. Instead, Buetow parroted Plaintiffs' counsel's damages arguments. *E.g.*, Ex. 1, 103:1–4.

2

<u>**LEGAL STANDARD**</u>

Federal Rule of Evidence 702 governs the admissibility of expert testimony: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education" may testify in the form of an opinion or otherwise if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, (b) the testimony is based on sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Lipitor (Atorvastatin Calcium) Mktg. v. Pfizer, Inc.*, 892 F.3d 624, 631 (4th Cir. 2018). In assessing the admissibility of expert testimony under Rule 702, this Court assumes a "'gatekeeping role'" to ensure that the testimony satisfies the Rule's requirements. *In re Lipitor*, 892 F.3d at 631 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). That "requires more than simply 'taking the expert's word for it.'" *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) (citation omitted).

<u>**ARGUMENT**</u>

Rather than presenting the results of a reliable methodology reliably applied, Buetow did the same thing he has done in other cases in which courts rejected his testimony: He made unsupported assumptions, appealed to his own authority, and applied a "methodology" of his own creation. His report is a string of *ipse dixits* that must be excluded.

## I. BUETOW'S OPINIONS ARE INADMISSIBLE BECAUSE HE DID NOT APPLY A RELIABLE METHODOLOGY.

Buetow did not apply a reliable methodology; instead, he repackaged Plaintiffs' counsel's legal arguments. Buetow testified that his "methodology" "was simply [] the approach that one would take . . . to meet the requests of counsel, and meet their theory of liability." Ex. 1, 102:23–

3

103:3. That was no slip of the tongue. Buetow defaulted to following counsel's directions. *See id.* 103:1–4, 105:8–9, 105:16–19, 101:17–102:12.

Buetow opined that the Freedom Funds Active Suite were imprudent investments as of November 30, 2014 because (1) not all of the funds underlying the Active Suite had a five-year track record, (2) only two of the underlying funds outperformed their benchmarks over the previous three- and five-year periods, and (3) in 2011, the funds had a "chaotic glide path." Buetow Decl. ¶¶ 23–25. He criticized Allen for comparing the Active Suite to the Index Suite, arguing that comparing other funds demonstrates that all class members suffered financial losses. *Id.* ¶ 27. Buetow created a composite score, based on his own "best practices," to identify "suitable" alternative funds. *Id.* ¶ 29. Based on that score, he opined that the American Funds and the T. Rowe Price target date funds were "clearly suitable replacements." *Id.* ¶ 37.

None of those opinions is based on a reliable methodology. All should be excluded. Fed. R. Evid. 702(c).

### A. Buetow's opinion that every fund underlying the Freedom Funds should have had a five-year track record is not based on a reliable methodology.

Buetow cites nothing to support his opinion that every fund underlying a target-date fund must have a five-year track record before the target-date fund can be included in a 401(k) plan. *See* Buetow Decl. ¶ 23. He bases that opinion on his "own published research" and literature that he claims to have read but didn't cite. *See* Ex. 1, 57:3–62:14; 131:13–20. That is the definition of inadmissible *ipse dixit*. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (criticizing *ipse dixit* testimony); *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 292 (4th Cir. 2021) (district court erred by not striking expert's *ipse dixit*); *Rhyne v. U.S. Steel Corp.*, 474 F. Supp. 3d 733, 757 (W.D.N.C. 2020) (excluding testimony because expert testified that a "gazillion" articles support his opinions but didn't cite them).

4

In *Ramos*, Buetow opined that "red flags" were evident to plan fiduciaries because some of the mutual funds underlying the Freedom Funds were not, in his opinion, good investments. 461 F. Supp. 3d at 1130. The *Ramos* court rejected Buetow's opinion. *Id.*

**B.** **Buetow's opinion that funds underlying the Freedom Funds should have outperformed their three- and five-year benchmarks is not based on a reliable methodology.**

Buetow opines that each fund underlying a target-date fund should outperform its benchmarks over a three- and five-year period (Buetow Decl. ¶¶ 24, 31) and bases that opinion on his claim that "[u]sage of three-year and five-year windows is standard throughout the investment industry." *Id.* ¶ 31. Although Buetow cites two publications (*see id.*), neither supports his testimony.

The first is his own article—co-authored with Bernd Hanke, who helped Buetow write his declaration. *See* Ex. 1, 20:10–21:17. In that article, Buetow and Hanke admit their bias, "enter[ing] the fray from the Plan participant side," and they cite nothing to support Buetow's three- and five-year "standard." Ex. 2 at 2. Buetow testified that the article supports his supposed "standard" because *he* used three- and five-year periods. Ex. 1, 126:1–6. But an opinion based on "because I said so" does not satisfy Rule 702. *See Joiner*, 522 U.S. at 146; *Sardis*, 10 F.4th at 292; *Zenith Elec. Corp.*, 395 F.3d at 419–20; *Rhyne*, 474 F. Supp. 3d at 757.

The second cited article *contradicts* Buetow's opinion: "[T]he practical implication of [this] article is that asset owners should focus on factors other than past performance when selecting managers." Ex. 3 at 41. When confronted with that statement from the article, Buetow disavowed the article (even though he cited it) and argued that the authors' "methodology is entirely flawed." Ex. 1, 128:20–129:3.

5

### C. Buetow's "composite scoring" is not reliable.

Buetow's "composite scoring" method is worse still. To identify "suitable replacements" for the Freedom Funds, Buetow created his own "composite" scores, claiming that his "approach is consistent with a fiduciary framework that is consistent with best practices." Buetow Decl. ¶ 29. Buetow offers no support for that framework other than his own experience. Ex. 1, 106:1–24. Buetow's "composite scoring" (which is not really composite scoring at all) is not peer-reviewed, and there is no evidence that anyone else in his field has accepted it or that any court has accepted it. *See id.* 106:13–108:1. His "best practices" are his say so, which is not admissible expert testimony. *See Joiner*, 522 U.S. at 146.

This is not the first time that Buetow has created his own benchmarks. In *Sacerdote*, Buetow testified about two funds' investment performance. 328 F. Supp. 3d at 283 n.20. Buetow claimed to have compared one fund's performance against its publicly stated benchmark, but "the benchmark Buetow used was his own creation." *Id.* at 316. Likewise, Buetow's composite scoring in this case is based on his say-so. He claims that he didn't generate workpapers showing his calculations, and Plaintiffs have not produced workpapers allowing Defendants to replicate or understand Buetow's calculations. *See* Ex. 1, 103:14–24. His declaration fails Rule 702's requirements. *See Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 421 (4th Cir. 1993) ("[W]e are unprepared to agree that 'it is so if an expert says it is so.'") (citation omitted).)

## II. BUETOW DOES NOT RELIABLY APPLY HIS "METHODOLOGY," AND HIS CALCULATIONS ARE INCORRECT.

Rule 702 requires an expert to reliably apply a reliable methodology. Fed. R. Evid. 702(d). Buetow's "methodology" is unreliable. But even if it were reliable, he did not apply it reliably.

*First*, as best we can tell without the benefit of analyzing workpapers, Buetow miscalculated his own composite scores. Buetow testified that he weighted each component of his

6

composite score equally (*i.e.*, his composite score is the average of its components). *Id.* 116:18–23. If that were true, one could recreate Buetow's composite score by adding the individual component scores and dividing by the total number of components.

But doing so does not generate the composite scores that Buetow calculated. If the composite score is an average of its component scores, the composite score cannot be lower than each of the fund's individual component scores. Yet that is what one sees in Buetow's Table 1. *See* Buetow Decl. Table 1. For example, Buetow's composite score for the Wells Fargo Target 2020 Fund (-1.89) is lower than each individual component score for that fund. *Id.* The same error appears in Buetow's composite scores for the Fidelity Freedom Index 2020 Investor Fund, the Harbor Target Retirement 2020 Inst. Fund, the Fidelity Freedom 2020 Fund, and the Fidelity Advisor Freedom 2020 I Fund. *Id.*

Buetow has made calculation errors before. In *Ramos*, Buetow had to correct "his expert report multiple times to correct serious errors in his damages calculations." 461 F. Supp. 3d at 1091. Buetow's errors here make his opinions unreliable. They should be excluded. Fed. R. Evid. 702(d); *Hall v. Bos. Sci. Corp.*, 2015 U.S. Dist. LEXIS 23980, at *71 (S.D. W. Va. Feb. 27, 2015) (expert methodology was "unreliable" because of "errors" and "haphazard application" of tests); *Bunch v. Pac. Cycle, Inc.*, 2014 U.S. Dist. LEXIS 183890, at *30 (N.D. Ga. Apr. 14, 2014) ("the [expert] testimony is unreliable because it is based on . . . calculations [that] contain significant errors").

*Second*, Buetow suggests "suitable alternatives" that violate his own invented "standards." According to Buetow, each fund that underlies a target-date series must have at least a five-year track record before the target-date fund itself can be included in a 401(k) plan. Buetow Decl. ¶ 23; Ex. 1, 59:15–60:9; 131:13–20. Buetow opines that as of November 2014, the American Funds and

T. Rowe Price target date funds were "clearly suitable" replacements for the Freedom Funds Active Suite. Buetow Decl. ¶ 37. But publicly available information shows that, as of November 2014, two funds underlying the American Funds 2020 and 2030 target date funds did not have a five-year performance history[4] and one fund underlying the 2020, 2030, and 2040 T. Rowe Price target date funds also did not have a five-year performance history.[5] The upshot? Buetow recommends funds that violate his own (unreliable) methodology. *See Cordoves v. Miami-Dade Cnty.*, 104 F. Supp. 3d 1350, 1364 (S.D. Fla. 2015) (excluding expert testimony because, among other deficiencies, expert didn't "follow the very methodology he purported to lay out"). When confronted with those facts, Buetow backpedaled, saying that he hasn't committed to using the American Funds and T. Rowe Price target-date funds in "the eventual damage report." Ex. 1, 63:2–20, 67:13–14; *see also id.* 66:4–5 (Buetow hasn't performed the "qualitative overlay" for the American and T. Rowe Price target-date funds), *id.* 67:2–3 ("We have not [done] any qualitative analysis yet.").

Because Buetow fails to reliably apply his own (unreliable) methodology, the Court should strike his declaration and exclude his testimony.

---

[4] https://www.sec.gov/Archives/edgar/data/1380175/000005193115001145/aftd485b.htm (showing all funds underlying the American Funds 2020 and 2030 target date funds as of October 31, 2014 and April 30, 2015); https://www.capitalgroup.com/individual/investments/fund/rilfx (December 14, 2012 fund inception date American Funds Inflation Linked Bond Fund, R-6); https://www.capitalgroup.com/individual/investments/fund/rmagx (November 1, 2010 fund inception date for American Funds Mortgage Fund, Class R-6).

[5] https://www.sec.gov/Archives/edgar/data/1177017/000120677414003171/nqrdf.htm (all funds underlying the T. Rowe Price target date funds as of August 31, 2014); https://www.sec.gov/Archives/edgar/data/1177017/000120677415001504/nqrdf.htm (all funds underlying the T. Rowe Price target date funds as of February 28, 2015); https://www.troweprice.com/literature/public/country/us/language/en/literature-type/quarterly-factsheet/sub-type/mf-single-class?productCode=RAF&currency=USD (July 28, 2010 fund inception date for T. Rowe Price Real Assets Fund).

### III. BUETOW'S OPINIONS ARE UNRELIABLE FOR ADDITIONAL REASONS.

Buetow's opinions also fail Rule 702's requirements because he is unfamiliar with the material in the record and the data underlying Allen's report. Allen describes in detail the materials that she considered. *See* Dkt. 57-1 at 4–5. In reaching his conclusions, Buetow did not consider most of those materials. Ex. 1, 26:12–16, 31:18–24, 32:17–34:2.

Buetow also testified that to "competently" opine on the amount of Plan-wide damages, "one would need complete data sets regarding Plan and participant account fund flows, information that Allen appears to have lacked and which places her entire analysis in significant doubt." Buetow Decl. ¶ 27 n.3. He also claimed that Allen's analysis of whether participants were "better" or "worse" off was not based on "the cash flows into the Plan." *Id.* ¶ 39. And at his deposition, Buetow repeatedly testified that data produced with the Allen Report was "incorrect" because it was "price return data not total return data." *E.g.*, Ex. 1, 25:14–26:2. He later admitted that he "presume[d]" that Allen's reference to "FactSet" data (*see* Dkt. 57 ¶ 12(r)) included total-return data but contended that Allen "did not share that data with us." *Id.* 53:8–18.

Buetow is wrong. Allen in fact used total-return data that Defendants produced to Plaintiffs. *See* Ex. 4 (email producing FactSet data). That Buetow did not consider most of the material underlying Allen's report—and did not know (or understand) that Allen used total-return data—is more proof that his opinions are unreliable. *See* Fed. R. Evid. 702(b).

### IV. BUETOW'S OPINIONS WILL NOT HELP THE COURT RESOLVE THE MOTION FOR CLASS CERTIFICATION.

The Court should also exclude Buetow's opinions because they won't help the Court resolve the class-certification motion. *See* Fed. R. Evid. 702(a). Buetow acknowledged that he has never offered testimony supporting class certification and does not opine on whether a class should be certified. Ex. 1, 12:15–17; 17:12–14.

9

Beyond that, much of Buetow's testimony represents legal argument. Buetow opines frequently on what the Complaint means and says. *See, e.g.*, Buetow Decl. ¶ 22 ("[T]he allegations of the Complaint make clear that, rather than engaging in any hindsight analysis, the Plaintiffs have asserted claims based upon performance issues."). Of course, reading the Complaint does not require "scientific, technical or other specialized knowledge." *See* Fed. R. Evid. 702(a); *Cook v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (expert's opinion is not "helpful" if it offers nothing more counsel's argument).

## **CONCLUSION**

This Court should strike Buetow's declaration and exclude his opinions and testimony.

November 15, 2021.

/s/ *Brian D. Boone*

Emily S. Costin
(*pro hac vice*)
ALSTON & BIRD LLP
The Atlantic Building
950 F Street, NW
Washington, D.C. 20004
Telephone:  (202) 239-3695
emily.costin@alston.com

Jordan Elise Edwards
(*pro hac vice*)
R. Blake Crohan
(*pro hac vice)*
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone:  (404) 881-7000
jordan.edwards@alston.com
blake.crohan@alston.com

Brian D. Boone
North Carolina Bar No. 38910
Brandon C.E. Springer
North Carolina Bar No. 54523
ALSTON & BIRD LLP
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Telephone: 704.444.1000
brian.boone@alston.com
brandon.springer@alston.com

*Counsel for Coca-Cola Consolidated, Inc., The Board of Directors of Coca-Cola Consolidated, Inc., The Corporate Benefits Committee of Coca-Cola Consolidated, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT</u>

I certify that this Memorandum complies with the page and type requirements of the Case Management Order and Local Rule 7.1 because it is less than 3,000 words and is 12-point font, double-spaced, with one-inch margins.

/s/ Brian D. Boone
Brian D. Boone
North Carolina Bar No. 38910
ALSTON & BIRD LLP
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Phone: 704.444.1000
brian.boone@alston.com

*Counsel for Defendants Coca-Cola Consolidated, Inc.; The Board of Directors of Coca-Cola Consolidated, Inc.; and The Corporate Benefits Committee of Coca-Cola Consolidated, Inc.*

11

## CERTIFICATE OF SERVICE

I certify that on November 15, 2021, I electronically filed the foregoing Memorandum with the Clerk of Court using the CM/ECF system, which automatically provides electronic notice to all counsel of record.

/s/ Brian D. Boone
Brian D. Boone
North Carolina Bar No. 38910
ALSTON & BIRD LLP
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Phone: 704.444.1000
brian.boone@alston.com

*Counsel for Defendants Coca-Cola Consolidated, Inc.; The Board of Directors of Coca-Cola Consolidated, Inc.; and The Corporate Benefits Committee of Coca-Cola Consolidated, Inc.*